JESUS BERMUDEZ, PETITIONER-RESPONDENT, v. BELL CONTAINER CORP., RESPONDENT-APPELLANT.

Bergen County Court
Law Division

Decided April 11, 1961.

281

*Mr. John W. Taylor,* attorney for respondent-appellant.

*Mr. John J. Carlin* for petitioner-appellee (*Messrs. Krieger & Chodash,* attorneys).

Brown, J. C. C. There is no essential disagreement between the parties about the facts. The petitioner, Jesus Bermudez, was assaulted by Peter J. Congro, a fellow employee, on February 3, 1959 at the respondent's premises. He suffered personal injuries.

Bermudez was a union shop steward for Local 65. As such he was spokesman for the union "for anything." He was empowered to issue or withhold the "union book" by which, after probation, a new member would enjoy the union privileges. Congro had served the necessary period of probation, but Bermudez refused to sign the book because, in his view, Congro was "discriminating against the Spanish neighborhood."

The altercation exploded out of this situation. The fight "was on account of the book."

The compensation judge found that the issuance of "books" was a function related to a "contract" between the union and the respondent, and that the petitioner's responsibilities in this area exposed him to the injuries which arose out of and in the course of his employment because the contract was beneficial to the respondent and its employees.

As the respondent points out in its brief, there is no express proof in the record to support the findings of fact that there was "a contract" and that it "was to the benefit of the employer and of the employees," and "that certain rights and certain duties flowed therefrom." Assuming that these circumstances are fairly implied in the testimony, the critical question is whether the assault arose out of and in the course of the employment.

■ For compensation here there must be a

"* * * causal connection between the assault and the conditions attending the transaction of the employer's business." *Geltman v. Reliable Linen & Supply Co.*, 128 *N. J. L.* 443, 450 (*E. & A.* 1942).

■ Regardless of the liberal policy with which the Workmen's Compensation Law, *R. S.* 34:15-1 *et seq.*, should be administered judicially, the touchstone of liability must nevertheless be proof of a work-connected disability. The employee has the burden of establishing that his injury has resulted from a risk "reasonably incident" to his employment. *Tocci v. Tessler & Weiss, Inc.*, 28 *N. J.* 582 (1959). And

"A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service." *Cierpial v. Ford Motor Co.*, 16 *N. J.* 561, 564 (1954).

There is no dispute that the foregoing state correctly the applicable propositions of law. The decision depends upon how the facts are aligned.

■ The uncontradicted evidence establishes conduct of the petitioner by which he denied full union membership to Congro. The latter was deemed to be unworthy of complete affiliation because he "discriminated"; because he was "in trouble with the other members" and because he was the subject of "complaint." This precipitated a situation in which the merit of Congro's position was debated in a union meeting held in New York City prior to the incident in question. The reason for opposition to the Congro candidacy was "discrimination," as claimed by Bermudez, or default in attendance and the payment of dues as Congro contended. In either event, it was Congro's standing as a union member which was at issue. Whatever the reason, his exclusion from full union membership was hurtful—it cost him the loss of "union privileges" and "security plans" to which he considered himself "entitled." His frustration in these particulars caused him to threaten the violence which in fact erupted.

The encounter between Bermudez and Congro occurred in the respondent's plant and within the temporal ambit of the latter's operations. But its business was in no way affected or advanced by the controversy. There is no showing that the risk of injury was connected with the petitioner's fulfillment of his contract of service or that it was generated by any aspect of the employer's business whatsoever. Such work connection is the *sine qua non*:

"Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work." *Cierpial v. Ford Motor Co., supra*, 16 *N. J.*, at *p.* 568.

The differences between Bermudez and Congro did, of course, relate to a union matter. And it may be that the fact of a subsisting union contract beneficial to the respondent can be spelled out of the proofs. These two circumstances must be linked together, however, by a work connection before there is liability. The lack of such a link appears

to be the defect in the petitioner's case. It is evident that Congro's personal interest was very much at stake in the issue. How the respondent's welfare would be served or disserved by its resolution is not shown. Congro's complaint simply was that he was excluded from the union. He was prevented from acquiring full membership by the union's agent for reasons sufficient to the latter and limited, as the record shows, to considerations of internal union concern. At the time of the episode, Congro had not succeeded in bringing himself within the scope of the union contract which the compensation judge found to be the critical work connection.

Causal connection with conditions attending the transaction of the employer's business does not appear in this case as it does in the authorities cited by the petitioner.

For example, in *Grant v. Grant Casket Co.,* 137 *N. J. L.* 463 (*Sup. Ct.* 1948) the employee's duties included labor-management relations with union representatives. He was attacked in connection with the handling of a personnel matter. The court found that the risk was incident to advancement of the employer's labor relations. *Geltman v. Reliable Linen & Supply Co., supra,* was a case in which the employee was assaulted in resentment of the manner in which he had driven a motor vehicle "in fulfillment of the master's service." The assault situation in *Sanders v. Jarka Corp.,* 1 *N. J.* 36 (1948), was found to be one which was the culmination of a series of reactions triggered by a motor vehicle collision where the employee was operating a truck on the employer's business. In *Gerard v. American Can Co.,* 32 *N. J. Super.* 310 (*App. Div.* 1954), the assault was associated with the processing of a grievance originating in the employer's production operations.

It cannot be said in the present case that the employment was the cause of the injuries in the sense that, but for the employment, the accident would not have happened. The court said in *Howard v. Harwood's Restaurant Co.,* 25 *N. J.* 72 (1957), at *page* 83 of the opinion:

"The 'but for' or positional test for determining causation in workmen's compensation cases does not, as contended, make the employer a guarantor of every evil which may befall a workman within the physical time and space of his employment. * * * 'But for' connotes a standard of reasonable probability. Thus stated, the question is whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere."

The record makes it clear that the risk to which Bermudez was subjected was one personal to him and to his management of internal union affairs. The motive of Congro was vengeance for the Bermudez treatment. Congro sought to inflict it in a fight that was broken up in the New York union meeting. In such a context of general anger, the employment connection with the injury was minimal and compensation should be denied. *Howard v. Harwood's Restaurant Co., supra,* 25 *N. J.,* at *p.* 85.

A causal connection between the assault and the conditions attending the transaction of the respondent's business has not been proved. Accordingly the judgment below must be reversed and the petition dismissed.